This is the second case on the Court Call this morning, 209-388, People's State of Illinois v. Josh L. Westmorland. On behalf of the Appellant, Ms. Phyllis J. Corkow. On behalf of the Appellate, Mr. David Burnett. Counsel. Good morning. May it please the Court. This morning, Mr. Westmoreland asks this Court to reverse his convictions for criminal sexual assault and sexual exploitation of a child or to grant him a new trial. We've raised a number of issues on appeal. It's my intent to address first the reasonable doubt claims and the claims that improper evidence of prior consistent statements and effects of the incident on the complainant were improperly admitted and we will address the remaining arguments as time allows. With reference to the claim involving Nicole on the criminal sexual assault, there obviously is no contest regarding the fact that a sexual... You're referring to N.D. I am referring to N.D. Thank you. And there obviously is no contest but that a sexual act was committed. The question is whether or not that act was committed, first of all, with the consent of the victim and secondly, that the defendant otherwise did not know that the victim or alleged victim had consented. We will submit to the Court that even at this point in the litigation here on appeal, it is not completely clear whether the prosecution claims that N.D. was intoxicated or whether she was sleeping at the time that the sexual act commenced. There obviously was considerable evidence about the imbibing of alcohol but however, N.D.'s testimony regarding her condition at the time of the sexual act is extremely sparse. She testified twice but testified only to the effect that she awoke to find Joshua having sex with her. It's clear under the statute that the issue of intoxication can be relevant but the statute defining the offense of criminal sexual assault does not address the question of intoxication. Rather, the statute addresses the question of knowledge. There must be knowledge on the part of the accused that the victim was unable to give knowing consent. So twice the issue of knowledge is stated in the statutory element. Wasn't there plenty of testimony, Ms. Perko, from the other girls as well as the, I believe his name was Watt, that she had vomited several times throughout the night? I think the one guy even said for approximately 10 or 20 minutes and then everybody put her to bed. Wasn't there a lot of testimony concerning her drunkenness, if you will? Well, there is significant testimony that she vomited and I think it is a fair inference that she vomited because she drank so much. The period of vomiting, according to my understanding of the record, is that it was a period of vomiting and when it was over there was no more vomiting, although it was a protracted period of vomiting. Well, that's kind of inconsistent because I think it wasn't the testimony that some of the girls said she vomited downstairs and then she vomited upstairs and Watt said she vomited one time for like a 10 minute period. Actually, she herself testified that she vomited only once upstairs. I believe that there was a conflict between actually two of the other girls with reference to whether she had vomited just upstairs or also downstairs. But regardless, as you said, couldn't you make, wouldn't it be reasonable for the court to make a reasonable inference that the young girl drank as much as she said that she drank and then vomited all that time? Couldn't you make a reasonable inference that she was pretty intoxicated? It can make the inference that the alcohol affected her. I don't think that it necessarily can make the inference that at a point later in time after the vomiting that she was intoxicated. And furthermore, the court clearly on the basis of that testimony could not make the inference that she was so intoxicated that she was incapable of giving knowing consent because that is the question under the statute. The question is not directly whether or not she was intoxicated, but whether or not a state of intoxication was so severe that she was deprived of the ability to give knowing consent. So how can the state prove that? Well, the state proves that through the manifestations of her conduct and we might look at other cases to see how the state proved that. So for instance, the general ways that in numerous prosecutions that intoxication is proved is by stumbling, mumbling and so forth and so on. But that proves intoxication generally for purposes of absolute liability offenses such as driving under the influence. But for purposes of showing that she's unable to give knowing consent. Correct. She really needed to testify to her mental state or at least some other witness needed to testify to perhaps irrational conduct on her behalf or some similar evidence. There certainly are ways to prove this. Do you agree if she was asleep at the time the sexual act began that that's proven, correct? Correct. If she was asleep. There's no way to give consent when you're asleep. Correct. I agree that intoxication is different. We're talking about sufficiency of the evidence. We're talking about any rational prior fact looking at this could have found the defendant guilty. My understanding is the victim testified she fell asleep and the victim testified that she woke to find the defendant having sex with her. And there's a text message from the defendant that says she woke up thinking I was raping her. So now based upon even just those few little things, isn't there enough to say that there's a rational prior fact could find that she was asleep when the sex act began separate aside from intoxication? I wish to come back to the text message because that's one of the separate issues. But with reference to the sufficiency, these are the facts that I think show that her testimony, if it should be interpreted as testimony that she was asleep, is patently incredible. First of all, we know it's undisputed. Her own testimony is that she was wearing belted and fitted jeans. It takes a good deal of manipulation to remove that type of clothing. Furthermore, that clothing was not completely removed. Her testimony, and I checked it this morning in the record, is that it was moved to mid-thigh patently. Her legs were somewhat bound. They were incapable of being significantly splayed in that situation, inhibiting or making penetration difficult. Furthermore, she testified that there was repeated penetration. The question clearly arises if there was repeated penetration and if she was able to testify under oath that there was repeated penetration. How did she know this if she was not awake? And furthermore, when she ascertained that there was repeated penetration, why did she not ask for it to stop? There are additional circumstances. Well, she did ask for it to stop, didn't she? Well, she got out of bed, but only, obviously, after there had been repeated penetration. That is her testimony on the stand, that there was repeated penetration. And our position is that she could not have been asleep during repeated penetration or she could not have known that there was repeated penetration. In addition, there was an absence of crime complaint. So it's our position that all of these circumstances together make it simply not likely that this act could have occurred without cooperation, without her active participation. And in this regard, and it somewhat comes back to the question that Justice Shasta asked me, and I think it is important to contrast the two cases from this court that discuss criminal sexual assaults under similar circumstances. It's noted in our brief that courts have stated that there are not many cases in this area. But it happens that this district of the court itself has decided two of them. And one of them is Fisher. And that was the case in which the complainant or victim was lying on a bench and the sexual assault occurred. Both the victim and a witness requested the defendant to stop the activity. He did not stop. He persisted in the activity. Clearly, under those circumstances, criminal intent and the knowledge that the victim was not consenting is patent. This should be contrasted from the situation at bar where there's no indication that Joshua persisted in activity, attempted to renew the activity after she removed herself from the bed. There is nothing like that. The other case, which is more of a sleeping case, is the Wick case, W-Y-C-H. In that case, the victim was wearing loose clothing, a nightgown. And reading the opinion, one readily can tell that the court was concerned with the fact that she testified to penetration and at the same time testified that she was asleep. The court in that case said that there was no suggestion in that case of a lengthy penetration and it also noted that there was prompt reporting. This stands in stark contrast to the case at bar where there was a claim of repeated and therefore somewhat lengthy penetration and there was no prompt reporting. Well, I think that is the issue for the trial court, is it not, to determine what length the penetration was. I mean, the testimony that she made, it was repeated. I don't recall there being any testimony as to how, without getting graphic, how much it was repeated. It seems obvious that he did not ejaculate at that point because the testimony is that he went out of the room and if you believe his testimony, he went to the bathroom and ejaculated. Or if you believe the girl's testimony, he was on the couch. But in any event, I think that isn't that an issue for the trial? And how are we to question and reevaluate that testimony that the court heard with the length of the penetration? I don't think that that's a credibility question when the only evidence is the complainant's evidence that there was repeated penetration. I don't see how the trial court can extrapolate anything from that testimony except that there was repeated penetration. And that repeated penetration and the supposed victim's awareness of repeated penetration is inconsistent with the claim that she was asleep. Let's go back to the pants down. Did your client not testify that he removed the belt and took the pants down? Correct. He did. He did so testify. There's no question about that the pants were removed. And the further testimony is, I believe from both, I definitely know from the complainant but also from my client that the pants were not completely removed from her body. So that, I mean, there isn't any dispute on that question. The testimony is consistent. The point is that with, and Andy's testimony was that the pants were removed to mid-thigh. The point is that with being bound, having one's legs bound, female's legs bound in that fashion considerably disenables the act of penetration unless there is mutual conduct. Well, is his testimony that the pants were removed to mid-thigh? Correct. His testimony the same way? Correct. It's consistent testimony. Okay. But isn't it his testimony that he did indeed penetrate? Yes, I believe that is his testimony. The sexual act is not in question. Correct. But then why are you making the argument that? Because the question is whether or not sexual penetration could have been achieved in these circumstances without mutual activity. His further testimony is that she moved into his conduct as he began embracing her and kissing her. And that she moved towards him to participate in the conduct. So. All right, but this, I mean, getting back to my colleague's question here, this was all an argument that I presume was made to the trial court, right? Correct. It was made to the trial court. Okay. But this court retains the duty to determine whether or not that testimony is sufficient beyond a reasonable doubt to meet the statute. I mean. No, I understand. All right, listen, your time is up, but I want you to get to these other points that you haven't had a chance to get to yet. Okay. Briefly with reference to the reasonable doubt argument on Kelly and sexual exploitation of a child. The testimony by the complainant is that Josh sat on the corner of the couch and was masturbating. She was asleep. She became awake when he sat down. She saw that he was masturbating. She, quote, kind of looked at him. He immediately stopped and left the area. And you're talking about KF. KF. So if you could use the initials as are used in the brief as opposed to stating the names, that would be for you. Okay. So KF, her testimony in and of itself negates an essential element of the offense. An essential element of the offense of sexual exploitation of a child is the accused's intent or knowledge that a child would view his or her acts. When the testimony is that immediately upon being viewed, he ceased the acts and left the area, it's our position that that testimony itself from the complainant negates one of the essential elements of the offense. The two evidentiary arguments that I indicated I wish to make comments on were the claim that prior consistent statements of the complainants were introduced into evidence. This court needs to recognize, I believe, how many instances of these prior statements were admitted. Each of the four complainants plus N's mother testified to prior consistent statements of these complainants. Sarah testified, Kelly, Caitlin. Use their initials. No. I'm sorry. N twice and the mother of N. So there is a large volume of testimony. You think it would be a difference? There's a difference whether or not it was a bench or jury trial. I think there's a difference if it's not clear from the record that the trial court relied on it. There are two indications in this case that the trial court relied on it. The first indication is that the trial court overruled the defense objections to the evidence. But perhaps more importantly, is in the trial court's comments in the finding of guilt, it specifically alluded to the testimony of N's mother regarding N's statement. So that shows the prejudice. We argued that this evidence was admitted in the trial court on the basis of the statute in the Code of Criminal Procedure that allows prior identifications. The state has apparently abandoned that argument and argues rather on appeal that this was prompt complaint evidence. Well, this is not prompt complaint evidence, of course, because it included details and it included identification. And neither of those aspects or facts are admissible pursuant to the prompt complaint exception to the hearsay rule. Getting back to the identification, didn't the Supreme Court speak to this in Shum? People read Shum, S-H-U-M. And are you asking us to abrogate Shum? I'm sorry, Your Honor, but I'm not familiar with the case offhand. The state didn't cite it, and I'm not really familiar with the principle that the court is indicating. I believe that I thoroughly researched the question of whether or not this type of testimony fits under the concept of prior identification of substantive evidence. I didn't find any indication that it does. With reference to the prompt complaint issue, first of all, prompt complaint evidence is limited to what might be called rape-type cases, penetration-assaulted cases. Three out of the four complainants in this case didn't even have those types of allegations. So to my understanding of the law and the Shum case to the contrary, if I'm not aware of it, it does not allow this type of evidence. So you're saying that the prompt complaint only applies to penetration and not abuse? Correct. Correct. I mean, there's a long history of that rule existing in Illinois. That, of course, is not the rule with reference to the spontaneous declaration or cited utterance exception to the hearsay rule, but it has been the rule of Illinois longstanding with reference to prompt complaint. With reference to the effects of the incident on Ann, again, our brief cites four different cases, including the Haydor case from 2003 from this district. Which case is that? Haydor, H-A-D-O-R. I got it spelled H-O-D-O-R. Okay. I'm sure that's wrong. But in any event, that case overturned a criminal assault conviction where evidence was admitted of the complainant's counseling after the offense. The other cases we cited are similar, and it's our position that this creates a body of law indicating that this type of conduct is not admissible. As the Haydor or H-A-D-O-R case says, in that case it criticizes vague testimony that suggests trauma, and it makes a point of saying that this testimony has no bearing on guilt or innocence. Again, the testimony in this case was admitted over the objection of the defense. Was H-O-D-O-R or H-A-D-O-R a consent case where the defense raised the issue of consent? I can't swear to that at this point, Your Honor. Because H-O-D-O-R says that where the testimony shows that the treatment was received for a reason other than simply to evoke sympathy from the jury or the fact finder, it's theoretically admissible. And if it's to rebut the issue of consent, maybe it's theoretically admissible. Well, then you fall into the problem also discussed in that case of it being vague. I mean, there was no position taken by the prosecution in the trial court, nor a development of this that would explain how, and the issues in this case, Ann testified that she suffered emotional injury. Her mother testified that she suffered a soccer suspension, that she had to have an alcohol evaluation, and that she suffered ridicule. So, didn't the court allow that in to rebut the argument that she told her mom because she was feeling badly about what happened and she was trying to avoid punishment? No, the court allowed it in with reference to Ann's testimony on the question of injury because the defense elicited on cross-examination that she did not suffer any physical injury. No, no, I know that about the, I appreciate your argument on the injury, but I'm talking, addressing your argument about mom's testimony. The court justified letting that in based upon the state's reasoning that, well, we don't want them, they're trying to say that she's looking, she was looking to avoid punishment when, in fact, she did avoid punishment. I mean, the entire question of punishment, really, anything that happens after the offense, I mean, I can't allow for the possibility of the question asked by Justice Burke, that there could be psychological testimony admitted that showed that psychological trauma existed because somehow connected to the consent defense. I mean, hypothetically, we could allow for that possibility, but in general, something that happens after the offense has absolutely no bearing on a criminal trial. What happened at the time of the offense, or the alleged offense, that's the question in a criminal trial. Something that happens afterwards, it would have to be fairly exceptional and probably in the area of expert psychological testimony to allow an exploration of circumstances after the offense. And that, of course, is what distinguishes the DALL case cited by the state involving the order of protection, which existed before the offense and therefore negated the defendant's defense of consent. So for all these reasons and the reasons presented in our brief, we ask that the convictions be reversed or that a new trial be granted. Thank you. Thank you, Counsel. Counsel for the State? Good morning, Your Honor. Counsel, I'm going to ask you to start on a point that she almost ended on, which is this question of the indirect evidence of a lack of consent. That's what she was last talking about. Are you talking about the evidence where she was punished? Yes. Or how she... Right. And she distinguishes the DALL case, which I believe you cited. But her point to us was that she cited a whole string of cases and discussed them. And if I'm correct, I think she said you didn't address any of the cases she cited. I have to agree. That paragraph was missing. But those cases... I'm sorry. Say that again. That paragraph was missing. In my brief, I agree. I didn't cite them. But those three cases... I'm sorry. The paragraph was missing. You wrote it. Yes. For some reason, something didn't get in. Okay. It could have been my fault. I cross out. But anyway, those are psychological cases where they're talking about psychological injury. And all three of those cases emphasize the fact that psychological injury, there was no question about consent in those three cases. This is a completely different situation from those cases. In this case, the State had to rebut the consent defense of the defendant. And that is why that particular information was introduced. Plus, there's just no way... Well, especially when the judge is trying it, that he's going to really... It's going to invoke any type of sympathy for the victim. I mean, she got suspended from, I think, the soccer team and had to go to alcohol evaluation and, you know, gotten some other trouble. It's not like those cases where these people... One of the victims in the cases the defendant cites, one of the victims tried to, in fact, commit suicide. She was in the psychiatric ward. Those cases were consistently talking about the psychological damage and were invoking sympathy. So I don't think they're really appropriate to this case. So you think the emotional and social effects, more so the emotional effects, were properly admitted by the court? I think they were properly admitted. You know, if there had been a... You had asked the question before. In a jury trial, maybe a little bit different. I think it would be a closer case here with the trial. Judging the evidence, I don't think there was really a problem there. And even if there was, the evidence against this defendant is so compelling that it certainly would have been harmless, these few statements. Here, you know, the victim testified, I believe, we believe, and certainly the trial judge did, convincingly that she was not aware of what was going on. Now, the fact that, you know, counsel talks a little bit about, you know, there might have been a couple penetrations. But I think pretty much anyone who's gone to college has seen people or been in parties where people pass out and you can't wake them, you know. And this was a victim who had eight to ten shots. And I don't know how big the glass was, but a shot, even a shot of ounce, within two hours, certainly she was inebriated. She threw up, she only remembered throwing up once. But the other witnesses testified that she threw up upstairs bathroom, downstairs bathroom. She didn't really, she couldn't recall much of anything. Now, the fact that, you know, she woke up in the middle of this penetration, well, someone coming from that state of inebriation, coming kind of to some sense of, you know, consciousness. I mean, it might have taken months or two, you know, to feel like, you know, is this a dream, something like that, coming out of that state. So I don't think that really makes, is too strong of a, you know, position for the state in that case. Can we talk about, if you're finished, talk about this conversation between the girls on the way to practice the next day. How is that not hearsay and how is that admissible? Well, there's a prompt complaint exception. The defense counsel's saying that there was no prompt complaint. This shows immediately the next morning these girls were talking about what was done to them by the defendant. To me, that is a prompt complaint. That is a hearsay exception. Let me just interrupt you for a second. Keep your train of thought. I just want to clarify a couple of very specific points. She made the point that the prompt complaint exception only applies in instances of penetration rape. And it does not apply to the other charges of abuse, et cetera. Well, I disagree with that. And if that's what the law states, I disagree with that contention. I think the sexual assault prompt complaint includes all of that, not just penetration. Okay. But what happens if the – actually, I think she's right. So what are we going to do now if it turns out upon further review that she's right, that those statements are just flat out not admissible with regard to the other counts? Well, number one, there's other reasons they're admissible. Well, let me – hold on a second. I wanted to clarify another specific point she raised, which is that you guys have abandoned the 115-12 basis – let me finish now – that the trial court used and are relying exclusively on the prompt complaint thing. And she's correct that you don't attempt to, anywhere I saw, support the ruling on the basis that the trial court ruled. She made that statement, I think, in her brief and today. So are you guys abandoning – or you have abandoned the 115-12 argument, the basis the court used? No, we're not abandoning it because, in this case, which I bring out in the other parts of the brief, is that all of these subjects were subject to cross-examination. So, in fact, it's not really a hearsay problem. Every one of these statements were subject to cross-examination, and that's what this particular statute says. It says a statement is not rendered inadmissible by a hearsay rule if declared and testified as a trial and is subject to cross-examination. Let me get – the statute you're reading from is 115-12? Correct. But you didn't address any of that in your brief, right? Well, I may not have specified 115-12, but I certainly spent sufficient time on the fact that all these victims were cross-examined, which gives you another situation where they can – you know, it removes the hearsay question. Well, I want to get that right. I mean, I'm not sure I'm following that. Other than in the narrow confines of 115-12, the availability of the person for cross-examination does not eliminate a hearsay problem. I mean, you can't ask somebody right there while you're talking to them, examining as a witness, what they said before, and certainly they're subject to cross-examination. But the basis of hearsay is that they cannot – those statements cannot be cross-examined. Not – you're not – you're talking about when there's an exception to the hearsay rule. Right, and there's an exception around complaint exception to the hearsay rule. Plus, they were cross-examined, so there really is not a problem there. Plus, I think the state has the right to produce these statements when the defendant is claiming consent. They have to rebut his testimony. Well, I mean, that's what 115-12 is designed to do. But – and that's what the trial court relied on, and she made the statement in her brief and today, and I got to tell you, it looks like you guys abandoned it. Oh, well, I disagree on it. I talked about cross-examination. We're definitely not going to disagree on it. But – can I go on? Sure. Yeah, I just wanted to speak to the rest of the testimony. The – again, the victim, I think the counsel really accentuates or is speaking to knowing consent. Now, I think it's obvious and it certainly can be reasonably inferred that the defendant did know that this person could not consent. Back to the fact that she was so passed out that he was able to remove her pants, I think that goes to prove again that she was unable to know and consent and gives him that knowledge that she wasn't able to know and not consent. I just want to get back to that. Is there any other questions, Your Honors? Let's get to her defense with respect to the incident on the couch. Okay. Again, I think there's a reasonable inference that a person who's – he had already awoken her once by trying to take – he was removing her belt and – or unbuckling her belt, zipping down her pants when she woke up. The timing is not clear, but again, she woke up. If someone's sitting on a couch where this person is sleeping and masturbating, I think it can be reasonably inferred that this person, especially when this person's already awakened once before, that this victim may see this person masturbating. If he didn't have knowledge of that, he could have went – like he did state that he went into the bathroom and did that. Well, that was a natural testimony. Counsel, is the standard there – or I don't know if the right word is standard – the element of the offense, is that the defendant think the victim may see or that it's – is it stronger that he – that there's a great – I'm a point of freeing. I thought it was more than just may see. I mean, that's a really – Well, I think there's certainly a chance that – Yeah. I don't think it's that element. Once the person goes, she was sleeping, but she's already awakened a couple times. Counsel, I'm trying to think. You said may, and then you said there's a chance. And I think the way it's written, I don't remember the exact wording, but the likelihood of the victim seeing has to be greater under the law than just may or a chance. And I misspoke. I think he was pretty sure that she was going to awake. You know, he was in his shorts and T-shirt. He had already tried to awaken her – or he did awaken her by unzipping her pants and unbuckling her, and she did awake, and then he's sitting by the side of the couch masturbating. I think he did have knowledge that she was going to see him. Okay. What about the counsel's argument that as soon as he was aware she did see him, he stopped and left? So that – she says that that means that, on the contrary, not only did he not think that she was going to see him, she – he didn't even want to. You know, I think, you know, he might have had second thoughts, but that doesn't remove the knowledge he originally had. I mean, here was someone who was trying to take the pants off another victim. Okay. Any other questions yet? Well, under the – if you haven't abandoned the 1-12-15 – no, it's the other – under the 1-12-15 argument that we have to be dealing with identity. Now, what about her point that there's no – identity is never an issue in this case. Everybody knows who he is, so those – the 1-12-15 doesn't apply because we're talking about identity as not being an issue. Well, certainly in her condition, there could have been a contested fact about her identity, but I think the most important thing was, again, just to rebut that consent defense. And I don't think that's a problem to say. Thank you, Your Honor. Dr. Garza, will you rebut? Just a few things, Your Honor. With reference to the questions regarding the offense involving K, the sexual exploitation of a child, there's a discussion in the defense opening brief at pages 29 to 30 about what knowledge requires. And the discussion is that knowledge is more than should have known. The concept of should have known is something that applies to recklessness or negligence, but not to knowledge. With reference to the issue of hearsay, prompt complaint, and curing of hearsay, our argument on appeal is framed as a matter of prior consistent statements. The underlying rationale that forbids prior consistent statements of witnesses is that hearing something repeatedly causes the trier effect to be more likely to believe it. And it is that rationale underneath the rule that demonstrates how this improper evidence truly undermined the integrity of this trial and deprived Josh Westmoreland of a fair trial. The status argued that and testified that she was not aware of what was going on. The point of the defense argument is that there was no such testimony. That was the point of one of the responses that I gave to Justice Shasta during my opening argument this morning. There is a paucity of evidence. There is relatively no evidence about Ann's condition, about her mental state, about her frame of mind, nor is there any evidence from which that could be inferred. Well, you attempted to get in the conversation, or the defense attempted to get in the conversation between the defendant and her in bed and was precluded, correct? Correct. We were precluded from that. But that, of course, is the type of, and that argument, of course, in our brief, is that another claim of error because we were prevented from developing that. And with reference to that argument, the claim, that was not hearsay. The defense was not trying to prove that C is a person who acts erratically or has emotional problems or whatever her threat of throwing herself off the bridge on the night in question was all about. I mean, it was an attempt to show that there was conversation, that there was give and take between Josh and Ann, and that this in general showed their relationship and definitely showed the relationship and interaction of them on the night in question. Going back to another statement of the prosecutor this morning, there's a discussion that we know that people pass out and they can't be awakened. Yes, we know that. That certainly was the gist of the evidence in the Fisher case decided by this court on that criminal sexual assault. That young woman was passed out on a bench. I mean, her head was hanging over, and it's certainly fair to conclude that when both she and another witness asked that defendant to stop the activity, that her inability to push him off or to extract herself physically from that position, that that evidence is having been passed out. But there is no competent evidence in this case that she was passed out. And then I might direct your honors to our, I believe it would be our fifth argument on review, where we are complaining about the text messages and the instant messages. In the middle of that, of course, is a message from C, where she says Ann was the expletive passed out. But in fact, there is no direct evidence of this, and that came in through that improper cross-examination. When the court purported the evidence to be developed regarding the conversations that took place between the defendant and the victim. Correct. Are you saying that that, let's just take that standing alone. Is that standing alone reversible error? I think it would be difficult for that standing alone to be reversible error. There was other evidence presented that the victim was awake and was speaking, and that evidence came in without objection. And there was evidence that someone testified, I think it may have been the defendant, that they talked for 15 minutes before anything happened. Correct. I think were that alone the problem in this case that perhaps that issue may not have been raised on appeal. But I mean, there is our concluding argument about cumulative error. And lesser errors or errors that otherwise would be harmless become significant if there are other errors. And you are looking at cumulative error that really causes the trial not to have fundamental integrity. Okay, thank you both for your arguments. And that will be taken under advisement of decisional issue in due course. There will be a short recess before we call the next case.